The next matter, number 23-1108, Tomas Caz v. Merrick B. Garland. At this time, would Counsel for the Petitioner please introduce himself on the record to begin? Good morning, Your Honors. I may please the Court. My name is Christian Meyer. I'm here on behalf of Petitioner Tomas Caz. I would seek two minutes of rebuttal. That's fine. Thank you. So here, the Board's decision to affirm the immigration judge's determination that the petitioner failed to establish the requisite nexus to a protected ground was made against the substantial weight of the evidence on the record. It's important to note that the Board's review assumed in arguendo that the testimony was credible. As such, reviewing both the declaration, the credible fear interview, as well as the testimony, overwhelmingly supports that the indigenous race of Petitioner was the central motivation and that this was not just another view of the evidence, but the only reasonable view that could be determined from the substantial weight of the evidence. Relying on Hernandez-Lima v. Lynch, the Board stated that nexus could not be established because general conditions to which all would be vulnerable does not adequately establish nexus. The statements of the petitioner go directly to this. There's nothing to suggest that these folks were anything other than private actors. No. What is the governmental nexus to this? There is not. However, as argued, these were private actors that the government of Ecuador is unwilling and unable to control. I would point to the U.S. State Department's report that specifically states that there are laws against employment discrimination, which was a heavy basis of the discrimination in this case, but those laws are not adequately enforced. So I believe that the nexus was well established. Now, the petitioner's statements, you know, directly point to that nexus. In one of the several attacks that was made. Well, what does that mean, not adequately enforced? I mean, based upon that reasoning, we could bring the whole native population to the United States because the whole population, and we're aware, that the natives in Ecuador are discriminated against. Only if they face harm rising to the level of persecution. Now, that was not specifically addressed in the board's decision. They only upheld the nexus finding. However, you know, it was established that they were acting with impunity, and this is a countrywide practice that is specifically targeted against Ecuadorans of indigenous race. Counsel, didn't the immigration judge, though, rule against your client earlier in the analysis? In other words, I think the immigration judge concluded that there just wasn't persecution here and then made the nexus finding as an alternative basis, and I think also found your client not credible. I'm wondering if you could address those portions of the decision. Yes. So beginning, you know, first with the persecution argument, the persecution that was lodged at the petitioner included not only the robbery, which was the main basis for the finding that the harm did not rise to the level of persecution, but it included death threats as well, you know, credible death threats, which, you know, occurred in multiple instances and were, at least in one instance, accompanied by a deadly weapon, which supports a finding that these were imminent and credible death threats. In addition to that, I would point the court to matter of TZ, which specifically notes that non-physical factors such as the imposition of fines or specifically, you know, the rescission of employment or discrimination, you know, based on employment can rise to the level of persecution. So considering these things in the aggregate, you know, the harm should have been found to rise to the level of persecution, and the immigration judge did not conduct the aggregate analysis of that, instead focusing mainly on the robbery. The same was true with the nexus analysis. Counsel, I'm sorry, can I just, because you discussed the weapon, I think one of the main reasons that the immigration judge here found, made a ruling that he found your client not credible was because of the inconsistent testimony about whether there was a weapon and what the weapon was. So I'm just wondering, what's your best argument about why the record would compel a different conclusion on that credibility issue? Certainly because that response was the result of a leading question from the immigration judge. It was never suggested in the credible fear interview, nor any of the declarations provided to the court that the weapon was anything other than a machete. And the petitioner responded in direct answer to, was this weapon a gun? He responded, yes. Now, the judge should have been analyzing reasonable explanations. And in redirect, petitioner did note, as well as noting in his credible fear interview, that he suffered from major anxiety and stress during official proceedings. That was a reasonable explanation, which was made in multiple places in the record and supported a finding that the main basis of the adverse credibility finding was that discrepancy. Petitioner never made any affirmative statement that the weapon was anything other than a machete. Counsel, on the issue of a fear of future persecution, the BIA affirmed the decision of the IJ that your client could relocate internally and did that because the petitioner himself said that after that first incident, he went to live with his parents about three or four hours away and lived there uneventfully for a year. What would compel a contrary conclusion on that issue, given the fact that the petitioner himself seemed to testify that he could relocate safely? Well, I would note that the standard for internal relocation is not just that you could relocate to avoid harm, but under all of the circumstances, it would be reasonable to do so. So why wouldn't it be reasonable? Due to the indigenous discrimination, specifically in reference to employment, that the petitioner faced not only in Guayaquil, but in Riobamba, his hometown, that he did live in, as you noted, without incident. However, the circumstances noted in both his declaration and credible fear interview indicated, if you'll just permit me a moment, I can quote him directly. He noted that he relocated because, I knew that people sometimes looked down upon me and other Quechua people because of our heritage, but I believe that in a larger city, noting Guayaquil, where he went for work and was persecuted, I would be safer and have an easier time finding work and not being discriminated against. That's AR 152. So that indicates that in this hometown, while he may not have asserted that he suffered harm rising to the level of persecution, he was facing discrimination. He was facing employment discrimination, and that, under the circumstances, make it unreasonable. If I may continue, I would also note that Tendien V. Gonzalez notes that important factors in the viability of relocation include social and familial ties. So the employment discrimination cuts directly against his social ties, and he noted the fact that his only family were his parents in that location. The rest of his family had relocated to the United States, so that cuts against the familial ties, making internal relocation, although he may have avoided fear for a short amount of time, the full circumstances made it unreasonable to do so. And finally, I would note that given Petitioner established or has argued that the substantial weight of the evidence merited a finding of past persecution on account of a protected ground, he should not have borne the burden of establishing internal relocation being reasonable under the circumstances and did not benefit from that finding. Thank you, Counsel. Thank you. Thank you, Counsel. At this time, if Counsel for the respondent would introduce herself on the record to begin. Good morning, Your Honors. Marie Robinson for the Attorney General of the United States. So just as an initial matter, I'll just note that the board's decision in this case rested on two grounds. There was the internal relocation ground, which Counsel was just discussing, and then there was also the lack of nexus to any statutorily protected ground. So should this court disagree on both of those issues, then remand would be needed for the agency to address credibility, because the board assumed without deciding that he was credible for purposes of the decision. And also some of the questions, I believe the immigration judge found that the Ecuadoran government had taken strides and would be willing and able to protect him, and the board also did not reach that issue. So the two issues that the board was addressing was nexus and internal relocation. I'm sorry, Counsel. The opposing counsel raised the issue of the government being unwilling or unable to protect him from persecution. You're saying that because the board concluded that there was no nexus, they never reached that issue of the ability of the government to protect him from persecution on a protected ground? Is that what you're saying? Yes, Your Honor. So the board addressed nexus and found no nexus, and then addressed internal relocation, which is also dispositive as well of the merits of the asylum and withholding claim. It found that the Convention Against Torture claim was waived because he didn't advance it in his brief, but otherwise did not address the government's role. So our contention would be that if remand is necessary under ANSB-Ventura, the board would then have to address in the first instance these other findings, including credibility. So Petitioner's claim is premised on two incidents when he was robbed at work in Guayaquil. After those incidents, he returned to his hometown of Riobamba, where his parents resided, and at the time of this hearing still lived. Riobamba was located approximately three or four hours away, and he testified that he lived there without incident for approximately a year. He moved back in, I believe, July 2013 and came to the United States in December of 2014. He did not describe any incidents. I assume your argument is that employment discrimination doesn't rise to the level of persecution. So, Your Honor, I don't believe that the issue of prosecution was addressed by the board. The issue is that the undisputed facts here show that there was a place where the petitioner was able to reside safely in Riobamba. I'm sorry, that's what I was referring to. Counsel made the argument that he would face employment discrimination if he relocated and therefore it wasn't reasonable for him to do so. So I believe counsel is relying on generalized evidence of country conditions. His brief does not address specifically his prior successful relocation. Petitioner said that he moved to Guayaquil to work. He does not mention any harm that he suffered in Riobamba, and the immigration judge reasonably found the continued safety of his parents and the facts of petitioner's case that he lived there safely in Riobamba, moved to Guayaquil, had these two incidents with people there whom he never saw again, and then went back to Riobamba and lived there for a year without issue, that that was persuasive. And petitioner did not challenge that before the board specifically or before this court and instead relies generally on evidence of country conditions, which the immigration judge acknowledged but found that the fact that there was an area of the country where petitioner had shown he was able to live safely was dispositive. Counsel, you're, again, opposing counsel says that's too narrow a view of the relocation issue. It's not just a matter of safety, but it's a broader reasonableness inquiry that takes into consideration whether he would continue to face discrimination, whether he had family ties. Is that a fair summary of the test we should apply? Just the fact that he was there safely does not really answer the question whether the IJ's determination on relocation was well-founded. Yes, Your Honor. So I would just say petitioner never mentioned harm in Riobamba. And he also, the fact, I mean, family ties, his parents were residing there still at the time of this hearing. He did not mention them having any issues. He said that they lived in an area of Riobamba, and so that was where he went back to, and that was where he resided. So as far as all of the factors, including family ties, they appear to be present. He did testify that much of his family had come to the United States. Counsel, can I ask you about the nexus argument? Yes, of course. So if we are to credit the petitioner's testimony, as you said the BIA did here, said that it assumed he was credible, wasn't his testimony enough to show nexus if he testified that the people who had attacked him and threatened him understood that he was indigenous? He explained why he thought they understood that he was indigenous based on the language that he spoke, the way that he appeared. Why isn't that sufficient for the legal standard, which is just that it has to be one central reason for the harm, not the central reason? Yes, Your Honor. So as you noted, the court has held that the protected ground has to be at the root of the persecution, so that that's what brought about the conduct. And here the petitioner testified that he was robbed of shoes, clothes, and money, that both of these events occurred on harvest day, and he acknowledged in his brief that the men were plainly motivated by money and criminality. And turning to his testimony, when he was asked why these people targeted him, he said, quote, they wanted me to leave the farm. They didn't want me to work there. They thought that I was there to take work away from them. He later said they don't care about anything. They're just bad people. They don't worry about anything. They just like harming people. But didn't he testify pretty clearly that he thought he was targeted because he was indigenous, that the reason they chose him was because he was indigenous and they didn't want him working there because he was indigenous and he was taking their work away? I don't think that the record compels that conclusion, Your Honor. He said that when they attacked him, they said bad words, and they did make fun of him for being small and for being indigenous the first occasion. He did not mention any statements during the second incident. And the immigration judge acknowledged the petitioner's argument that he was persecuted, at least in part, based on an impermissible motivation. But the court found that the motivation of these bad people who robbed the petitioner was to commit crime. Counsel, why isn't this a classic mixed motive situation? I mean, if the BIA is going to assume that he testified credibly, then he testified credibly to the ethnic slurs and that they targeted three other indigenous individuals. Why doesn't that establish a protected ground? And we've said you can have mixed motive cases. Yeah, they could be out to make money, but they could also be out to get money from a particular group, and they targeted that particular group. Does the BIA ever address that mixed motive possibility? That seems to be what we have here. Yes, Your Honor. So the board acknowledged petitioner's arguments, but noted that that was another view of the evidence and found no clear error in the immigration judge's motives finding. And the immigration judge correctly stated the standard, which was persecution has to be motivated by the victim's traits. Petitioner asserted that he was targeted at least in part on an impermissible motivation, and then the court expressly found that the motivation was crime. So the court acknowledged the possibility of a mixed motive, but found that that was not what occurred here, that the people who targeted petitioner and robbed him did so to commit a crime and not on account of any protected basis. And the government would submit that that is supported by the evidence record. Counsel, I'm just confused because you're talking about you don't think the record compels the conclusion, but earlier you said, and it is what the BIA said, that it's assuming that petitioner testified credibly. So that suggests that he testified credibly on every point. So then really aren't we just looking at the board's legal conclusion that the testimony, assuming it is 100% true and credible, is not sufficient to show nexus as a legal matter? So I would say there's a difference between credibility and persuasiveness. It's one thing for petitioner to believe that that was what the motivation was to the extent that that's what he said. He also said he did not know why these men attacked him or what if these men attacked other people. He said they were indigenous from other places. I just know they are like me. But then he also said, I don't know who else. So his testimony goes back and forth. But even assuming that petitioner believes that that was why he was targeted, the totality of the record evidence does not compel the conclusion that he's correct. So he could be credible in his beliefs and that was not persuasive to establish that that was the motivation given the rest of his testimony. Any further questions? Thank you, counsel. Thank you. Thank you. At this time, if counsel for the petitioner would introduce himself back on the record to begin. He has a two-minute rebuttal. Christian Meyer for petitioner, Thomas Cass. So in relation to the nexus finding, in addition to the testimony, which as you noted should have been treated as credible, petitioner did likewise submit conditions including multiple studies on entrenched racism within Ecuador. Now those studies have supported that, I quote, Indians placed within Ecuador society is characterized by, quote, poverty, illiteracy, and subordination. And further, that this belief is imposed upon indigenous Ecuadorans by the non-indigenous. That's AR 228. This is historically entrenched as campaigns have perpetuated stereotypes against indigenous Ecuadorans to justify inequality and poverty. Counsel, do you have anything you can cite for what you are asserting today, which is that because he would have faced employment discrimination if he relocated, that that goes into the reasonableness factor? Well, I would point to a matter of TZ, the BIA holding. Now that specifically speaks to employment discrimination making a case for persecution. So that would lend itself to the consideration of whether he could avoid harm, not just physical harm, which he faced in Guayaquil, but as well as this employment discrimination that he faced not only there, but also in Rio Bamba, which he noted in his declaration when he said that that was one of the main motivating factors for leaving initially. So I would point to that to help support that, you know, that cuts against both, you know, the analysis of harm in internal relocation, but as well as the reasonableness factors. If he's unable to work, he can't support himself. It makes it unreasonable to relocate, even if he did not suffer physical harm. Thank you, Counsel. Thank you.